**SIGNED THIS: April 08, 2010**

_____
            **MARY P. GORMAN**
   **UNITED STATES BANKRUPTCY JUDGE**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| In Re | ) | |
|---|---|---|
| | ) | In Bankruptcy |
| JAMES C. GVAZDINSKAS, | ) | |
| | ) | Case No. 08-73105 |
| Debtor. | ) | |

**O P I N I O N**

Before the Court is the Second Amended Application for Payment of Professional Fees (Attorney) filed on February 12, 2010, on behalf of the law firm of Scott & Scott, P.C. ("Scott & Scott"). The Second Amended Application seeks an award of fees in the amount of $44,544.55 and reimbursement of costs advanced in the amount of $1,635.27, for a total of $46,179.82. For the reasons set forth below, the Second Amended Application will be allowed as to fees in the amount of $44,069.55 and as to costs in the amount of $1,635.27, for a total of $45,704.82.

-1-

James C. Gvazdinskas ("Debtor") filed his voluntary Chapter 11 petition on December 15, 2008.  On January 14, 2009, Debtor filed an Application to Employ attorney R. Stephen Scott and Scott & Scott.  The Application to Employ stated that hourly rates of compensation for legal services performed would be $250 for partner attorneys, $200 for senior attorneys, $145 for associate attorneys, and $45 for paralegals.  The Application to Employ disclosed that a retainer of $33,500 had been paid.  The Application to Employ was granted by Order entered March 10, 2009.

On July 17, 2009, Debtor filed his Chapter 11 Plan and Disclosure Statement.  After objections were filed by creditors Dennis Brummet and Marine Bank, a First Amended Chapter 11 Plan was filed on September 8, 2009.  On September 9, 2009, an Order was entered approving the original Disclosure Statement.  An Objection to the First Amended Chapter 11 Plan was filed by Marine Bank on October 22, 2009 (and amended the following day), but the parties resolved their disputes and filed a Stipulation to that effect on October 26, 2009.  On October 30, 2009, an Order Confirming First Amended Chapter 11 Plan of Reorganization was entered.[1]

On November 5, 2009, Debtor filed his First Application for Payment of Professional Fees (Attorney).  The First Application was sent out on an objection date notice and drew an objection by the

---

[1] On November 6, 2010, a Joint Motion to Amend the Confirmation Order was filed, and an Amended Confirmation Order was subsequently entered.

Office of the United States Trustee ("UST"). The First Application was set for telephonic hearing on December 10, 2009. Following that hearing, the Court entered an Order requiring the filing of a supplement to the First Application to address the deficiencies raised by the UST. On December 28, 2009, Debtor filed a Revised First Application for Payment of Professional Fees (Attorney). On January 7, 2010, the Court entered an Order pointing out remaining deficiencies in the Revised First Application. Specifically, the Court noted that, although project categories were utilized, the individual time entries were not broken down in a way that the Court, the UST, or any party in interest could ascertain how much time was spent with respect to each particular category. The Court also noted that the Revised First Application sought compensation for a non-attorney who was unidentified and whose qualifications to perform compensable paraprofessional services were not set forth. Because the Revised First Application did not justify an award of all of the fees requested, the Court permitted - but did not require - the filing of a Second Amended Application to address the remaining deficiencies. On February 12, 2010, a Second Amended Application for Payment of Professional Fees (Attorney) was filed.

Section 327 of the Bankruptcy Code provides for the employment, with the court's approval, of disinterested professional persons by the trustee to represent or assist the trustee in carrying out the trustee's duties. 11 U.S.C. §327(a).

A Chapter 11 debtor in possession has many of the rights, powers, and duties of a trustee. *See* 11 U.S.C. §1107; In re Luria Steel & Trading Corp., 168 B.R. 913, 915-16 (Bankr. N.D. Ill. 1994), *aff'd* 189 B.R. 418 (N.D. Ill. 1995). Accordingly, the Debtor had statutory authority to seek to employ attorneys and other professionals.

Section 330 of the Bankruptcy Code provides the statutory authority for awarding compensation for the services and reimbursement for the expenses of properly employed professionals. 11 U.S.C. §330. The court may award professionals reasonable compensation for services rendered. 11 U.S.C. §330(a)(1)(A). The court may also provide reimbursement of actual and necessary expenses. 11 U.S.C. §330(a)(1)(B).

Decisions from courts throughout the country and, in particular, within the Seventh Circuit have consistently held that bankruptcy courts have an independent duty to review professional fee applications. Cohen & Thiros, P.C. v. Keen Enterprises, Inc., 44 B.R. 570, 574-75 (N.D. Ind. 1984); In re Wildman, 72 B.R. 700, 705 (Bankr. N.D. Ill. 1987). The court has a duty to examine independently the reasonableness of fees requested. In re Price, 143 B.R. 190, 192 (Bankr. N.D. Ill. 1992) *aff'd* 176 B.R. 807 (N.D. Ill. 1993), *aff'd and remanded* 42 F.3d 1068 (7th Cir. 1994); In re Wyslak, 94 B.R. 540, 541 (Bankr. N.D. Ill. 1988); In re Chicago Lutheran Hospital Association, 89 B.R. 719, 734-35 (Bankr. N.D.

Ill. 1988); In re Pettibone Corp., 74 B.R. 293, 299-300 (Bankr. N.D. Ill. 1987); Wildman, 72 B.R. *at* 705.  The burden of proof to show entitlement to the fees requested is on the applicant. Price, 143 B.R. *at* 192; In re Kenneth Leventhal & Co., 19 F.3d 1174, 1177 (7th Cir. 1994);  In re Spanjer Bros., Inc., 191 B.R. 738, 747 (Bankr. N.D. Ill. 1996); In re Stoecker, 114 B.R. 965, 969 (Bankr. N.D. Ill. 1990); Pettibone, 74 B.R. *at* 299; In re Lindberg Products, Inc., 50 B.R. 220, 221 (Bankr. N.D. Ill 1985).

Accordingly, a fee application must provide sufficient information for a court to understand what services were actually provided and to determine whether the fees requested are reasonable and the services rendered were necessary and beneficial.  To supply that information, the applicant must set forth a detailed statement listing each service performed, the time expended for the performance, and the fee requested for the service. Fed.R.Bankr.P. 2016(a).  Further, a narrative must also  be included to explain the necessity of the services.  "These detailed applications establish the 'actual,' while an accompanying narrative explanation of the 'how' and the 'why' establishes the 'necessary'." Wildman, 72 B.R. *at* 707.  The burden is on the applicant to establish his entitlement to the fees requested, and the application should contain all information necessary to make the determination. Lindberg Products, 50 B.R. *at* 221.  A court reviewing a fee application is not required to search through volumes of pleadings

in a bankruptcy case and related adversary proceedings in an attempt to find justification for the legal services rendered and the fees requested. *See* In re Taylor, 66 B.R. 390, 393 (Bankr. W.D. Pa. 1986) (A court "will not indulge in extensive labor and guesswork to justify a fee for an attorney who has not done so himself.")

To assist the court in determining whether requested fees are reasonable, fee applications should contain separate sections for distinct project categories such as preference actions, asset sales, receivable collections, and the like. Wildman, 72 B.R. *at* 711. A narrative should also be included explaining the need for the legal services, the results obtained, and the fees and costs requested. Id. One running chronological listing combining preference collections, asset sales, and other legal work is not adequate. Id.

In reviewing fee applications, a court must consider "the nature, the extent and the value" of the legal services rendered and must take into account a variety of factors including the time spent, the rates charged, and the benefit to the estate of the work done. 11 U.S.C. §330(a)(3). The court may not award compensation for services that the court determines were not reasonably likely to benefit the estate or were not necessary to the administration of the case. 11 U.S.C. §330(a)(4)(A)(ii).

The Second Amended Application raises a number of issues

regarding the awarding of fees and costs to professionals. Each will be discussed separately.

## Compensation of Paraprofessionals

Reasonable and necessary services rendered by a paraprofessional employed by a trustee, attorney, or other professional are specifically included as compensable services under the Bankruptcy Code. *See* 11 U.S.C. §330(a)(1)(A). The rationale for the inclusion of paraprofessional compensation is "to reduce the cost of administering bankruptcy cases" by encouraging the use of paraprofessionals "where the work involved could easily be handled by an attorney's assistant, at much lower cost to the estate." H.R.Rep. No. 595, 95th Cong., 1st Sess. 329-30 (1977).

At the August 1997 American Bar Association Annual Meeting, the following definition of "legal assistant/paralegal" was adopted:

> A legal assistant or paralegal is a person, qualified through education, training, or work experience who is employed or retained by a lawyer, law office, governmental agency or other entity and who performs specifically delegated substantive legal work for which a lawyer is responsible.

*http://www.abanet.org/legalservices/paralegals/def98.html*

When "the services provided by the paraprofessional represent a shift of tasks ordinarily performed by a lawyer or other professional, and the service is reasonable and necessary, the service is compensable." In re CF & I Fabricators of Utah, Inc.,

-7-

131 B.R. 474, 489 (Bankr. D. Utah 1991). However, if clerical or other secretarial work is assigned to the paraprofessional, then the work is charged to overhead and cannot be separately charged to the client. Id. The same is, of course, true if clerical tasks are performed by an attorney or other professional. Work which is clerical in nature does not become compensable legal work because it is performed by an attorney, a paralegal, or another professional.

To determine whether a paralegal's work is compensable legal work, a court must "look at the kind of services that are traditionally charged to overhead, the amount of independence allowed to the paraprofessional, the experience or education required to accomplish the assignment, the responsibility delegated to the paraprofessional, and the amount of supervision retained by the professional." Id. at 489-90. As set forth above, it is the nature of the work - legal or clerical - which ultimately determines whether the work is compensable under §330.

Further, whenever a fee application requests compensation for a paraprofessional's work, the paraprofessional's specific experience and qualifications must be stated. Id. at 493. Even if the nature of work is, in fact, clearly legal, the work is not compensable under §330 unless the person rendering the services has sufficient training and expertise to perform substantive legal work. Therefore, time spent by general clerical staff advising

clients or drafting documents is not compensable under §330.

Through the Second Amended Application, Debtor seeks the allowance of paralegal fees for the services of Susan L. Greenwalt. According to a copy of a certificate issued by The National Association of Legal Assistants/Paralegals and attached to the Second Amended Application, Ms. Greenwalt is a certified legal assistant/paralegal. According to Mr. Scott, Ms. Greenwalt has worked for Scott & Scott in a paraprofessional capacity in bankruptcy cases for some time.  The Second Amended Application seeks fees at a rate of $45 per hour for Ms. Greenwalt, and the itemization which is part of the Second Amended Application shows that she expended 32.79 hours.  Thus, her fees in the case total $1,475.55, or 3.3% of the total fees requested.  Her primary activities in the case involved case administration activities (14.12 hours) and work on fee/employment applications (12.05 hours).

Based upon a careful review of the itemization attached to the Second Amended Application and the record in this case, it is clear that Ms. Greenwalt is qualified to perform paraprofessional services and that her services were of value to the bankruptcy estate.  Had a paraprofessional not been utilized, a great majority of Ms. Greenwalt's services would necessarily have been performed by an attorney.  Accordingly, those services are compensable.

However, several of Ms. Greenwalt's time entries appear to be

primarily, if not exclusively, clerical in nature, and compensation for that time must be disallowed. Specifically, Ms. Greenwalt's time entries on 03/10/2009 ("upload order"), 10/16/2009 ("cover letter; upload report"), 12/16/2009 ("cover letter; scan; upload"), and 1/12/2010 ("scan and upload") will be disallowed. These entries total one hour, or $45.

### Absence of a narrative

Professionals seeking compensation must include a narrative in their application which sets forth the nature and purpose of each particular activity or project. Wildman, 72 B.R. *at* 711; In re Minich, 386 B.R. 723, 728 (Bankr. C.D. Ill. 2008). The narrative should contain a statement explaining the significance of each activity or project, as well as an explanation of the purpose, necessity, and appropriateness of the activities and projects. Wildman, 72 B.R. *at* 711. Additionally, the narrative should address the effectiveness of each activity, what alternatives were considered, and the method of analysis relied upon for choosing the action taken, as well as any difficult or unusual problems encountered and the manner in which they were addressed. Id.

"The narrative summarizes the data contained in the application in intelligible form and instructs the court as to the substance and benefit of the services performed." CF & I Fabricators, 131 B.R. *at* 487. "It is not necessary that the

narrative be a comprehensive dissertation on all possible aspects of the issues involved." Id. A narrative should include the information that a client would need to evaluate his bill. Wildman, 72 B.R. *at* 711. The failure to include a narrative subjects an applicant to the significant risk that the application will be inadequate to justify the fee requested and may result in the full or partial disallowance of the fee.

Here, although Scott & Scott listed project categories for their work and stated aggregate amounts of time expended for each project, they failed to fully comply with the basic requirements of presenting a complete fee application. No narrative is provided to explain the necessity of work done in each of the various project categories. Further, time entries were presented in one long chronological listing and with each entry coded by alphabetical or numerical reference to one of the various project categories. This methodology was confusing. It also required the Court to finish the job of actually sorting the time entries into the various project categories. Clearly, the burden is on an applicant seeking fees to complete the sorting of the time entries and to present the time detail by project category. Here, Scott & Scott made little effort to satisfy that burden.

Fortunately for Scott & Scott, however, the Court is familiar with the case, the value of the professional and paraprofessional services provided to the estate, and the necessity of those

-11-

services.  Thus, the Court will, for one last time, overlook the shortcomings here.  However, the Court cannot overemphasize the importance of including an adequately detailed narrative in a fee application and providing time detail in a format that directly corresponds to the project categories. Applicants place themselves in severe and unnecessary peril when they fail to properly provide the required information in their fee applications.

### Insufficiently Specific Entries and "Lumping"

Records which give no explanation of the activities performed cannot support an award of fees.  Wildman, 72 B.R. *at* 708 ("Without accurate detailed time records the court lacks any objective basis for making a fee award."); In re Wiedau's, Inc., 78 B.R. 904, 907-08 (Bankr. S.D. Ill. 1987).  An entry of "telephone call" or even "telephone call with x" is insufficient.  Pettibone, 74 B.R. *at* 301.  An entry of "conference" or "meeting", "conference with x" or "conversation with x" is insufficient.  Id.; Price, 143 B.R. *at* 195.  Entries of "research", "legal research", or "bankruptcy research" are insufficient.  Pettibone, 74 B.R. *at* 302.  The nature and purpose of the legal research and for what matter it will be used should be noted.  Id.

The Court has identified several entries on the itemization attached to the Second Amended Application which are not compensable.  The itemization contains ten entries (1/5/09,

-12-

2/19/09, 2/27/09, 4/21/09, 4/27/09, 10/26/09(2), 11/24/09(2), and 12/4/09) by Mr. Scott which are described only as "telephone call with _____". In every instance, the individual at the other end of the telephone call is a player in this case. Nonetheless, without any additional description, however brief, these entries are simply not compensable. The aggregate of the time represented by these entries is 1.72 hours. Thus, Mr. Scott's fee must be reduced by $430 ($250 per hour x 1.72 hours).

There are also a number of instances in which entries describe more than one task. This Court has addressed the topic of "lumping" in a previous Opinion ruling on an application for compensation filed by Scott & Scott. *See* In re Vancil Contracting, Inc., 2008 WL 207533 *at* \*5 (Bankr. C.D. Ill. Jan. 25, 2008). The practice was, and continues to be, strongly discouraged. Time entries which inappropriately combine multiple tasks in a way which prevents evaluation of the reasonableness of requested fees can and will be disallowed. In this instance, however, the itemization is adequate (albeit barely), so there will be no further fee reduction on this basis.

**Minimal or Ministerial Tasks**

Attorneys should also exercise discretion with respect to whether an activity is so minimal or ministerial that it should not be billed at all. In re SVI Media, Inc., 2008 WL 4767454 *at* \*6

(Bankr. C.D. Ill. Oct. 31, 2008). "Receipt of email" or "review of email" has come to replace opening and reading the mail every day, and such tasks were, in the past, not normally billed to a client as legal services. Id. Thus, non-substantive communications and ones which are very brief or inconsequential generally should not be billed. Id.

In Mr. Scott's case, there are number of entries which include phrases like "attempted call to \_\_\_\_\_" or "call to \_\_\_\_\_, message left". Those would be examples of inconsequential services which generally should not be billed. However, these entries by themselves do not represent stand-alone charges and, therefore, there will be no further fee reduction in this case on this basis.

**Results obtained / value**

The final and most significant hurdle for a fee applicant to clear is demonstrating the necessity of the services and that the value provided to the bankruptcy estate justifies the fees being sought. See 11 U.S.C. §330(a)(3).

Based upon the Court's familiarity with this case, the Court finds that the services provided were of an overall high quality, that the services for which compensation is sought were necessary, and that substantial value inured to the bankruptcy estate as a result of the professional and paraprofessional services provided.

**Expenses**

Reimbursement is allowed for the precise expenses incurred, including only claims for fully-documented, actual, out-of-pocket expenses. Wildman, 72 B.R. *at* 731; Vancil, 2008 WL 207533 *at* *6. Expenses which fall under the heading of general office overhead are not reimbursable. Id.; In re Convent Guardian Corp., 103 B.R. 937, 939 (Bankr. N.D. Ill. 1989).

The expenses of $1,635.27 sought in this case consist only of the filing fee and the cost of copying and mailing the Plan and Disclosure Statement. These expenses are appropriate and subject to full reimbursement.

**Conclusion**

For the reasons set forth above, the Second Amended Application for Payment of Professional Fees will be allowed in the amount of $45,704.82, which is the amount sought minus a reduction of $430 to Mr. Scott's fee and a reduction of $45 to Ms. Greenwalt's fee.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###